LUALEMANA E. FAOA, Plaintiff

v.

SOSENE ASIFOA and LEFOTU TUILESU, Defendants

LUALEMANA E. FAOA for LUALEMANA FAMILY and
VILLAGE OF A'ASU, and TUITELE K.A. LE'OSO for
VILLAGE OF LEONE, Plaintiffs/Objectors

v.

A'OLOAU VILLAGE COUNCIL, Defendant/Claimant

A.U. FUIMAONO and the VILLAGE OF A'OLOAU, Plaintiffs

v.

TOLUAO FETALAIGA, Defendant

TUANAITAU TUIA, AVA VILI, TOLUAO FETALAIGA for
themselves and the VILLAGE OF PAVAIAI, Intervenors

LEPUAPUA STANLEY MASSEY UTU, for himself and on behalf
of the UTU FAMILY, Intervenor

TUILEFANO VAELAA, TUIAGAMOA, TUIOLEMOTU, and
TUITASI for "AIGA AITULAGI," Intervenors

High Court of American Samoa
Land and Titles Division

LT No. 29-86
LT No. 41-86
LT No. 12-87

49

February 11, 1991

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge

Counsel: For Plaintiffs Lualemana E. Faoa, Lualemana Family, Village
of A'asu, Tuitele K.A. Le'oso, Afoa L.S. Lutu
For Defendants Sosene Asifoa and Lefotu Tuilesu, Charles V.
Ala'ilima
For Plaintiffs/Defendants A'oloau Village Council, A.U.
Fuimaono and Village of A'oloau, Edwin Gurr
For Defendant Toluao Fetalaiga, Fai'ivae A. Galea'i
For Intervenors Tuanaitau Tuia, Ava Vili, Tolua Fetalaiga and
the Village of Pavaiai, Tau'ese P. Sunia
For Intervenors Lepuapua Utu and the Utu Family, Togiola
T.A. Tulafono
For Intervenors Tuilefan Vaelaa, Tuiagamoa, Tuiolemotu, and
Tuitasi, Tuiasosopo Mariota II

On Motion for Reconsideration:

Our ruling on this motion was announced from the bench on
February 5, 1991. This written opinion is issued primarily in order to
avoid any future misunderstanding about certain supplemental orders
directed to counsel at the time we ruled on the motion.

*Facts and Procedural History*

As is suggested by its caption, the present motion has had a long and complicated history:

1) The action the motion most directiy concerns, LT No. 12-87, was filed in 1987. The action was consolidated with other related cases, and the consolidated cases were tried in May 1990. After various post-trial submissions, the case was taken under advisement and judgment was rendered on August 6, 1990. The judgment provided, inter alia, that the present movant Toluao must vacate some land held to belong to various families of the neighboring village of Aoloau onto which he and his agents had entered in or about 1986.

2) Toluao did not file a motion for reconsideration or new trial within the requisite ten days. The timely filing of such a motion is a jurisdictional prerequisite to the filing of an appeal. A.S.C.A. § 43.0802; *see Taulaga v. Patea*, 17 A.S.R.2d 34 (1990) and authorities cited therein.

3) Toluao did, however, file a motion styled "Motion for Reconsideration and Stay of Execution" on September 10, 1990, twenty-five days after the jurisdictional deadline. This document explained its late filing by reference to the joint representation in the litigation of all the chiefs of the village of Pava'ia'i by a single counsel. This joint counsel had dealt with the chiefs through a single representative, who was alleged not to have notified Toluao of the adverse judgment within the ten-day time limit for filing motions for new trial or reconsideration. (Toluao's September 10 motion was brought by new counsel who had recently been retained by Toluao and/or members of his family.)

4) The motion was heard on September 26, 1990. The Court held that the motion for reconsideration must be denied for want of jurisdiction due to the statutory time limit, but that the motion stated possible grounds for relief from the judgment under T.C.R.C.P. 60(b). The Court therefore set the motion for rehearing as a Rule 60(b) motion for relief from judgment.

5) After rehearing and a responsive pleading by counsel for the chiefs of Aoloau, the Court held on December 10, 1990, that the Rule 60(b) motion should be denied. The Court held that Toluao had voluntarily submitted to the arrangement by which one counsel would deal with all the chiefs of Pava'ia'i through a single representative. The

Court further found that Toluao had entered into a similar arrangement in a prior case, representing to the Court that he could not afford to hire his own lawyer and that the chief whom he wished to designate to represent his family's interest (the same person who served as representative for the village in the present case) was a close relative of his; that the representative had apparently not consulted Toluao on major decisions during the course of the litigation, but that Toluao had continued to accept this arrangement, even signing his name to a stipulated judgment with which he later said he did not agree. Finally, the Court noted that Toluao had apparently left the island while the case was under advisement and did not allege that he had left the Pavaʻiaʻi representative or counsel any information about how to get in touch with him while he was off-island.

6) On or after December 27, 1990, the presiding judge received a letter purporting to be from Toluao's counsel, suggesting that a decision on the Rule 60(b) motion was long overdue. The tone of this letter was somewhat peremptory. The person who wrote it was either unaware or pretending to be unaware that a decision had been issued some weeks earlier. The letter was prepared for the signature of Toluao's counsel but was signed by one Ropati S. Pene (of whom more later) "for" this counsel. It was not filed with the Clerk but was placed in an envelope and given to a Court employee to be placed in the judge's mail box. The presiding judge received it on January 7, 1991, upon his return from a vacation.

7) The presiding judge, who is also the writer of the present opinion, inquired of the Clerk of Courts whether the decision had been given to Toluao's counsel. The Clerk indicated that a copy of the decision had been placed in counsel's Court box on December 10, the same day it was issued, as is the regular practice. The judge then wrote a memorandum to this effect and directed that it be placed in the Court box of Toluao's counsel, along with a second copy of the December 10 opinion. Shortly thereafter the judge personally checked counsel's Court box to make sure that the memorandum and the attached copy of the opinion had in fact been placed there. This was done on the afternoon of January 7.

8) On or about January 9, Toluao's counsel told the Chief Justice that the December 27 letter issued under his signature had been written and sent by Mr. Pene without his knowledge, and that he was deeply embarrassed by it.

9) On or about January 10, however, the presiding judge in the present case received a second letter also purporting to be from Toluao's counsel. Like the earlier letter, it bore the typed name of Toluao's counsel on the signature line but was signed with Mr. Pene's name "for" the official signatory. This letter stated, contrary to what counsel had told the Chief Justice, that counsel himself had sent the earlier letter after returning from a trip and learning that there was still no decision on the Rule 60(b) motion. Although quite different in tone than its predecessor, this letter was written in a style which the Court has come to recognize as that of the aforementioned Pene.

10) On January 11 the presiding judge sent counsel a second memorandum. It enclosed a copy of the January 10 letter and stated: "Although it [the letter] purports to be from you, it is not signed by you and I am quite certain it was not written by you. I have serious doubts about whether you are even aware of it." The memorandum requested that counsel inform the judge of the circumstances under which the letter was sent. The judge took the unusual step of having the letter hand-delivered to counsel by the Marshal of the High Court, this apparently being the only way to ensure a response from counsel himself rather than Pene.

11) Early the following week counsel called the Court to request an appointment. Counsel met with the presiding judge later that same week. He explained that he had not known about either the December 27 or the January 10 letters purporting to be from him. He had been off-island on December 27 but had been present on island on January 10. Apparently Mr. Pene had simply taken it upon himself to send this letter without counsel's knowledge.

12) The judge urged counsel to take immediate measures to regain control of his law practice. Particular stress was laid on the Court's need to be certain of two things: (a) that documents placed in the official Court box of a licensed lawyer or legal practitioner would be seen by the lawyer or practitioner himself; and (b) that papers filed with or otherwise given to the Court under the signature of a lawyer or practitioner, even when signed by someone else "for" him, have actually been written --- or at least read --- by him and represent his considered opinions regarding the matters stated therein. Counsel assured the Court that he would do this.

13) On January 18, 1991, which to the best of the Court's recollection was either the same day or the day after the meeting

described above, the present "Motion for Reconsideration" was filed. It asks for reconsideration of the denial of the earlier Motion for Reconsideration, which due to its untimely filing had been treated as a Rule 60(b) motion. Incredibly, the second motion was also filed after any date which could conceivably be considered the deadline for such filing. It was filed not only more than ten days after December 10, 1990 --- the day of the entry of the order whose reconsideration it seeks, which according to the statute and the precedents construing it is the day from which the ten-day time limit must be counted --- but also more than ten days after January 7, 1991, the day the judge personally saw to it that a second copy of the opinion was placed in counsel's box.

14) Along with the present motion, counsel has submitted a copy of our December 10 opinion. This appears to be the copy that was placed in counsel's Court box on January 7. It bears the stamp and signature of the Clerk certifying it to be a true copy and dated "1/7/91." It also bears a copy of the clerk's original stamp dated "12/10/90." Toward the top of the first page, however, in large letters, is the handwritten legend "Received: 1/9/91" followed by what appear to be Mr. Pene's initials. At the hearing on the present motion, counsel stated that his "records" showed that the opinion had not been received until January 9. The implication was apparently that it must be assumed not to have been put in his Court box until January 9 and that the ten days for filing a motion for reconsideration or new trial should be calculated from that day. When the presiding judge stated that he himself had personally seen the opinion in counsel's box on January 7, counsel responded, "It's my word against yours."

### Discussion

The motion to reconsider must be denied for want of jurisdiction. A.S.C.A. § 43.0802; *see, e.g., Taulaga v. Patea, supra; Fai'ivae v. Aumavae*, AP 2-76 (decided December 9, 1977); *Government of American Samoa v. King*, AP No. 19-1970; *Judicial Memorandum No. 2-87*, 4 A.S.R.2d 172 (1987). Because no motion for reconsideration has been filed within the statutory deadline, "the Appellate Division . . . has no jurisdiction to entertain an appeal . . . regardless of any arguments, equitable or otherwise, to the contrary." *Taulaga, supra*, 17 A.S.R.2d at 35; *see Judicial Memorandum, supra*, 4 A.S.R.2d at 174; *Fai'ivae, supra*.

The statute does not appear to provide a remedy for a situation

in which, due to an error on the part of a Court employee or a theft from counsel's Court box, a litigant does not receive notice of the judgment until after the ten-day deadline. There might be a way to mitigate this harsh effect in an appropriate situation. If we believed that Toluao's counsel had not received a copy of the December 10 decision until January 7, and if the present motion to reconsider had been filed within ten days of January 7, it is arguable that we could entertain yet another Rule 60(b) motion, vacate our December 10 order, and immediately re-enter it. This would start the statutory deadlines all over again, effectively reinstating the litigant's right to appeal.

Assuming that A.S.C.A. § 43.0802 should not be construed as implicitly prohibiting such a judicial end-run around its provisions, such a course of action should surely be reserved for extraordinary situations in which the equities are quite strong. At the very least, the Court should be reasonably certain that the litigant really did not receive timely notice of the adverse order and that he acted expeditiously as soon as he did receive notice. *See Spika v. Village of Lombard*, 763 F.2d 282, 285 (7th Cir. 1985), and authorities cited therein. Neither of these conditions is met in the present case.

In order to preserve whatever èquities he had as of January 7 --- the day the second copy of the opinion was placed in his Court box --- it was absolutely essential that counsel file his motion to reconsider on or before January 17, which *would* have been the deadline *if* the adverse order had not been entered until January 7.[1] Indeed, prudence would

---

[1] *See* T.C.R.C.P. Rule 6(a) (emphasis added):

In computing any period of time prescribed . . . by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. *When the period of time prescribed or allowed is less than 7 days*, intermediate Saturday, Sundays, and legal holidays shall be excluded in the computation.

The tenth day from January 7, not counting January 7 itself but

have advised filing a motion within a day or two. Instead, counsel (or, it would seem, his associate Pene) inexplicably waited until the eleventh day. Even giving the movant the benefit of every possible doubt about the facts before January 7, this puts him in at least as unfavorable an equitable situation as any other litigant whose counsel simply does not get around to filing a pleading until the day after a jurisdictional deadline. Indeed, the equities here are even weaker, since the present Rule 60(b) proceeding was itself a product of the missing of a jurisdictional deadline on August 16, and a ten-page judicial lecture on the subject of such deadlines had just been received by movant's counsel.

Nor, unfortunately, do we have any confidence in counsel's assertion that our opinion was not received in his Court box on December 10. First, if there is one thing every employee in the Clerk's office has learned to do right, it is to place Court orders in the boxes of the appropriate counsel *immediately* upon their entry. Second, although we have no reason to doubt counsel's word, it is not his word on which we must rely for the facts regarding what was received from counsel's Court box on or around December 10. This function seems to have been surrendered to Mr. Pene, who, as clearly appears from the record of this case and others, has been acting not as a messenger or a secretary but as a *de facto* law office under the license and signature of the counsel in question.

Mr. Pene has been perhaps the most frequent litigant in the High Court of American Samoa during the last six or seven years. He has, moreover, not been content to litigate on behalf of himself but has attempted on many occasions to represent other people in Court. He has cited his status as a member of various extended families, as an officer in corporations or a nominal partner in joint ventures, or as a "certified Samoan Court interpreter" or a "Samoan High Chief" in support of his argument that he should be allowed to represent other litigants "pro se," although he is not a licensed lawyer or legal practitioner. Court files suggest that he has also carried on an active practice outside of court,

---

counting the last day of the ten days, was January 17. This was not a Saturday, a Sunday, or a legal holiday. (It was a Thursday.) Because the period prescribed by the statute, ten days, is not "less than 7 days," it does not matter that there was an intermediate legal holiday on January 15. Nor does it matter whether the order placed in counsel's Court box on January 7 was picked up by counsel on the same day or one or two days later.

56

preparing legal documents and attempting to negotiate with insurance companies. During the mid-1980s the judges of the High Court frequently found themselves in the position of having to counsel, remonstrate with, and finally warn him about these activities. The warnings gradually became more stern, and in 1987 the Attorney General prosecuted him for the illegal practice of law. He was convicted by a jury, and the conviction was upheld on appeal. *Pene v. American Samoa Government*, 12 A.S.R.2d 43 (1989). He was given a suspended six-month sentence and placed on probation, but he has apparently not learned his lesson.

His latest gambit appears to be the association with counsel for the present movant. This counsel is a licensed legal practitioner. Legal practitioners are persons who have no formal legal education but were admitted to practice before the High Court at a time when there were few trained lawyers in the Territory. Although no new legal practitioners have been admitted since 1982, those who were admitted before that date are permitted to practice in land, matai title, and adoption cases.

Present counsel, a distinguished citizen of the Territory and the holder of a most important matai title, has long been a licensed legal practitioner but had not in recent years carried on an active practice except in occasional matai-title cases. This began to change about a year ago, when the Court began receiving pleadings and other papers under counsel's signature whose grammar, diction, and content were remarkably similar to those formerly received under the signature of Mr. Pene. The trademark feature of Mr. Pene's quasi-law practice, then and now, has been multiple duplicative and meritless motions for reconsideration, rehearing, new trial, amendment of judgment, clarification, etc. Missing deadlines is another of his specialties.

The time has come for this to stop. It was painfully obvious at the hearing on the recent motion, as it has been on other occasions, that counsel himself has had little to do with the conduct of the litigation being conducted under color of his license. As we noted in *Parisi v. Parisi*, 10 A.S.R.2d 106 (1989),

> The Court's unwillingness [to allow unlicensed persons to operate as lawyers] . . . derives not from enthusiasm for the concept of a lawyers' guild, but from experience with the unhappy results of amateur barristry. These have included not only artless pleadings and pointless arguments, but also the

57

> forfeiture of important substantive and procedural
> rights through the missing of jurisdictional deadlines or
> the fatal misconstruction of rules and statutes.

*Id.* at 111.

Although *Parisi* was not a case directly involving Mr. Pene, several of the illustrations we used in that case including the one involving "the missing of jurisdictional deadlines" did stem from our experience with his former illegal law practice. *See id.*, 10 A.S.R.2d at 110-11; *Lam Yuen v. Leomiti*, LT No. 3-87. The present case and *Taulaga, supra* --- a 1990 case in which the Appellate Division dismissed an appeal brought under the name of present counsel because, as in the present case, no timely motion for reconsideration had been filed --- illustrate that "the unhappy results of amateur barristry" are the same no matter whose signature is used.

In some circumstances, movant Toluao might be entitled to equitable credit for having been an innocent victim of the Pene deadline-missing machine. It appears from the record, however, that the present motion and its predecessor were generated not by Toluao himself but by none other than Mr. Pene. The first sign of any possible post-judgment motion on behalf of Toluao is a long letter dated September 5, 1990, about a month after the decision was rendered. It is addressed to one of the counsel in the consolidated cases and appears to have been written by Pene. The letter is signed by Pepe Lam Yuen, a close associate of Mr. Pene and evidently the principal occupant of the land now claimed by Toluao. It suggests that its author had been aware of the adverse judgment rendered on August 6 (and of the post-trial motions by other parties) for an unspecified period of time.

Mr. Lam Yuen and Mr. Pene were the co-plaintiffs in *Lam Yuen v. Leomiti, supra*, in which Mr. Lam Yuen unsuccessfully resisted Chief Leomiti's efforts at eviction by alleging, inter alia, that Mr. Pene was his "partner" in a multimillion-dollar "commercial farm" on Leomiti land and that Mr. Pene should therefore be allowed to represent the "partnership" pro se. The evidence in the present case reflects that the Toluao incursions into the land of Aoloau families, apparently spearheaded by Mr. Lam Yuen as agent or licensee for Toluao, began at about the time the Pene/Lam Yuen "partnership" was being evicted from the neighboring land of Leomiti. It also affirmatively appears from the memorandum filed on September 10 in support of the first Motion for Reconsideration that Chief Toluao did not then know about it, although

58

he did later endorse it. The picture that emerges is not of Toluao shopping for a licensed and competent legal practitioner and inadvertently getting Pene, but of Toluao agreeing to join in an effort generated in his name by the team of Pene and Lam Yuen. In any event, as we observed in our opinion denying the first untimely Motion for Reconsideration in this case, "it is an abuse of discretion for the court to use relief from judgment to allow an appeal where the party missed the deadline through his own fault or through the fault of his lawyer." 17 A.S.R.2d 151, 157 (1990) (citing *Spika v. Village of Lombard, supra*, 763 F.2d at 285), and authorities cited therein. Any remedy Toluao may have at this point is not against the parties who won the present case but against whoever it was that missed his deadlines for him.

Finally, to the extent that a balancing of equities has any relevance at all to the present motion, it must include an estimate of the likelihood of success on the merits should the jurisdictional issues somehow be avoided. The argument Toluao and/or Pene apparently want to make on appeal is that the various chiefs of Aoloau should not have been allowed to join as one party for the purpose of evicting Toluao's licensees, and/or that the Court should not have ordered such eviction without saying exactly which family or families of Aoloau owned the land. Toluao could have objected to this joinder at trial or at any point prior to trial but did not do so. Indeed, the very best time to object would have been upon the filing of the complaint in LT No. 12-87. At this time Toluao *was* represented by his own individual counsel, who filed an answer which raised no objection to the chiefs of Aoloau litigating "as a village" but merely contested on the merits the plaintiffs' assertion that the disputed land belonged to them. (Later, when Toluao's counsel withdrew, he himself decided to join the other chiefs of Pava'ia'i to litigate "as a village.") Moreover, we can conceive of no reason why the various Aoloau litigants, having proved by the preponderance of the evidence that the land belongs to some or all of them rather than to Toluao, should be required to litigate any internecine boundary disputes they might have in order to get an injunction against Toluao. The principal witness for the Aoloau parties did describe particular areas within the disputed land belonging to particular families of Aoloau. Their quarrel, however, was with Toluao and with the people he had sent onto their land, not with one another. At least in the absence of any pre-judgment objection from Toluao, the Aoloau plaintiffs were free to prove that the land belongs to one or more of them and not to him, without requiring the Court to decide the precise boundaries among the various co-plaintiffs. Having proved this, they were entitled to the injunction they sought.

59

*Conclusion and Order*

The Motion to Reconsider is untimely filed and is therefore denied for want of jurisdiction.

Were we to consider this Motion to Reconsider as a Rule 60(b) motion for relief from judgment, as we did with this movant's previous untimely filed Motion to Reconsider, we would deny it as not showing excusable neglect or any other ground for relief under Rule 60(b). Nor does it appear that there is a substantial likelihood that the movant would prevail on the merits should he be allowed to litigate further.

The following additional orders are entered in order to safeguard the integrity of future communications between counsel and the Court:

(1) Counsel shall authorize no one but himself to retrieve documents from his Court box.

(2) Counsel shall authorize no one but himself to use his signature or to file or send under his name any document addressed to the Court, to other counsel, or to clients or other litigants. In the event it should become absolutely necessary to have any other person sign a document "for" counsel, this should be someone other than Mr. Pene, and such signature should be authorized only on documents that have been read over the telephone or otherwise communicated in their entirety to counsel and specifically approved by him.

(3) Counsel is directed not to sign any document submitted to the Court, to other counsel, or to clients or other litigants unless he has personally read it and it represents his own considered opinion with respect to the matters stated therein.

It is so ordered.